IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TYRONE BROOKINS**,       ) | |
|                      ) | |
|       Petitioner        ) | |
|                      ) | |
| v.                      ) | Civ. Act. No. 07-423-GMS |
|                      ) | |
| **ELIZABETH BURRIS**, Acting     ) | |
| Warden, and **ATTORNEY GENERAL**   ) | |
| **OF THE STATE OF DELAWARE**,     ) | |
|                      ) | |
|       Respondents       ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, respondents[1]

submit the following in response to the petition for a writ of habeas corpus:

1. The grand jury indicted Tyrone Brookins and Japhis Lampkins in July 1980,

charging them with first degree murder (Del. Code Ann. tit. 11, §636(a)(1)), second

degree burglary, first degree conspiracy, two counts of second degree conspiracy, and

possession of a deadly weapon during the commission of a felony.  A Superior Court

jury in May 1981 convicted the two men of first degree murder, second degree burglary,

first degree conspiracy, and the weapons offense; the prosecution entered *nolle prosequis*

on the two counts of second degree conspiracy.  Brookins was sentenced in June 1981 to

---

[1] Elizabeth Burris became Acting Warden of the Delaware Correctional Center on
September 1, 2007.  She is accordingly substituted for Thomas L. Carroll, an originally
named respondent. *See* Fed. R. Civ. Pro. 25(d)(1).

life imprisonment without parole plus 15 years imprisonment, and his convictions were affirmed on appeal. *Brookins v. State*, 465 A.2d 785 (Del. 1983).

2. The evidence presented at trial established the following:[2] Mary Dugan lived with her son in an apartment at 1409 Delaware Avenue in Wilmington. Returning from shopping at the Acme Supermarket at Delaware Avenue and Dupont Street on the afternoon of April 2, 1980, Mary Dugan was killed shortly after entering her apartment. A neighbor in the apartment building heard a woman moaning before 3 pm. A short time later, the neighbor heard the front door of the building slam shut. She went to the window and saw a man run out from the building's front door and run toward Rodney Street; the description she gave of the man's clothing was consistent with a description of clothing worn by Lampkins earlier that day. At that point, the neighbor called the building manager and asked him to call police. Police arrived at the building at 3:13 pm. An officer, walking down the rear staircase of the building, noticed the rear door to Dugan's apartment was open. Looking inside, the officer discovered Dugan's body in the living room. She had been beaten on the head, repeatedly stabbed, and strangled.

Thomas Butler, a co-conspirator, testified against Lampkins and Brookins in exchange for pleading guilty to manslaughter and second degree conspiracy. Butler testified that on the morning of April 2, he and Lampkins committed an armed robbery in Newark, separating on their return to Wilmington. During the afternoon, he saw

---

[2] *See Lampkins v. State*, 465 A.2d 785, 786-87 (Del. 1983) (summarizing evidence).

Lampkins again, who was now accompanied by Brookins.  The three of them then ingested various drugs.  Knowing that Lampkins and Butler had successfully robbed someone earlier that day, Brookins was anxious to do so as well.  The trio first drove north on Delaware Avenue, past the Trolley Square neighborhood, considering a liquor store as a possible target.  The three then decided otherwise and returned to the Trolley Square neighborhood and went to the Acme Supermarket.  There they saw Dugan leave the store, and they followed her to her apartment.  Butler waited outside while Brookins and Lampkins went into the building.  Butler fled a few moments later after hearing Lampkins' voice, scuffling, and a woman moaning.

Hairs found on the back door of Dugan's apartment and on a tissue found next to Dugan matched Brookins' head and pubic hair.  A shoe print lifted from the blood-covered floor was similar in design and size of the footprint and shoe Brookins was wearing when arrested.  Blood on a vase found on a chair near Dugan was determined at the time not to be Dugan's blood, instead matching Brookins' blood type and enzyme markers[3] in all but one aspect.  Lampkins' brother and nephew testified about various statements Lampkins and Butler had made describing the murder.  The clothing worn by Lampkins at the scene of the Dugan slaying was similar to that seen by a witness to the Newark robbery.  The jury also heard a statement given by Lampkins to police,

_____

[3]*See generally* 1 Paul C. Giannelli and Edward J. Imwinkelried, SCIENTIFIC EVIDENCE 827-36 (3d ed. 1999).

about two weeks after the Dugan homicide, in which he recounted an assault he claimed to have witnessed about three months earlier.

Brookins testified that he was in downtown Wilmington at the time of the slaying, being with Debbie Benson. Brookins also explained that he had cut his hand when he fell playing handball with Eric Jones. Jones testified that he had told Brookins' attorneys he could corroborate Brookins' account of the cut to his hand. But Jones explained that he had lied to defense counsel when he had said that. The reason Jones gave for the change was that he had received a threatening phone call from prison. And though Benson supported Brookins' alibi at trial, her testimony was inconsistent with a written statement she had given to detectives on April 10. In that statement, initialed by her on each page, Benson declared that Brookins had been with her until about 1 pm on the day of the murder and then he told her he was going to a pool hall.

3. Brookins' convictions were affirmed on direct appeal. *Brookins v. State*, 465 A.2d 785 (Del. 1983). Brookins then pursued a series of federal habeas and state post-conviction efforts. *See Brookins v. Redman*, Civ. Act. No. 84-318-WKS (D. Del. Nov. 26, 1984), *cert. prob. cause denied*, No. 84-5837 (3d Cir. Mar. 29, 1985); *Brookins v. Redman*, Civ. Act. No. 86-226-JRR (D. Del. Sept. 10, 1986); *Brookins v. Redman*, Civ. Act. No. 87-434-JLL (D. Del. Oct. 5, 1987); *Brookins v. State*, 1986 WL 16796 (Del. May 1, 1986); *Brookins v. State*, 1999 WL 1090567 (Del. Oct. 14, 1999). In August 2002, Brookins, represented by the Public Defender, moved to have DNA testing done of blood spots on the glass vase.

Superior Court allowed the testing, which was completed in July 2004. *State v. Brookins*, 2002 WL 31477997 (Del. Super. Oct. 28, 2002). The DNA testing showed that the blood that was tested on the vase was not that of Brookins, but that of Dugan. Based on those results, the Public Defender moved for a new trial for Brookins under section 4504(b) of Title 11. The Superior Court, after considering the State's response to the motion and oral argument on the motion, denied the motion. On Brookins' appeal, the Superior Court decision was affirmed. *Brookins v. State*, 922 A.2d 389 (Del. 2007).

4. Brookins has now applied for federal habeas relief, advancing two claims: (a) Superior Court should have granted the Public Defender's motion for a default judgment when prosecutors failed to timely file a response to the section 4504 motion for a new trial or to timely request an extension of time in which to file the response; and (b) the state courts should have granted the section 4504 motion for a new trial. DI 1. These two claims were presented to the state supreme court in Brookins' appeal from the denial of his motion for a new trial, and accordingly, Brookins has exhausted state remedies. *See Smith v. Digmon*, 434 U.S. 332 (1978). Brookins' petition fails, however, to make out any claim for relief.[4]

---

[4] Brookins' contention that he is entitled to a new trial based on the DNA evidence was not ripe when Brookins filed his prior habeas petitions. As a result, this petition is not precluded by section 2244(b). *See generally Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005). In addition, respondents explicitly waive any statute of limitations defense that might be available under section 2224(d).

a. The Public Defender, on behalf of Brookins, filed a motion for a new trial on

July 27, 2004. In a letter dated September 15, 2004, the judge to whom the case had been

assigned directed the State to file a response by October 11, 2004 to the motion. On

October 7, the prosecutor to whom the case had been assigned wrote to the judge,

asking for a 45 day extension of time in which to answer the motion. Six days later,

defense counsel wrote to the judge, objecting to the State's request. The State's response

was filed on November 22, and on December 17, defense counsel filed a reply to the

State's answer. There matters seem to have stood until July 2005. At that point, defense

counsel moved for a default judgment, charging that the State's answer to the motion

for a new trial was untimely, there being no indication that Superior Court had ever

granted the State's request for additional time. Superior Court denied the request for a

default judgment, and the state supreme court affirmed that ruling. *Brookins*, 922 A.2d

at 391-92. Brookins' challenge to the state courts' decision in this regard is no more than

a challenge to the state post-conviction procedure, a claim that states no basis for relief

under the federal habeas statutes. *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)

(quoting *Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998)).

b. Under section 4504(b) of Title 11, a defendant may move for a new trial,

asserting as the basis for the new trial that DNA evidence, not available at the time of

trial, establishes his actual innocence. The court may order a new trial if the defendant

"establishes by clear and convincing evidence that no reasonable trier of fact,

considering the evidence presented at trial, evidence that was available at trial but was

not presented or was excluded, and the [DNA evidence] would have convicted" the

defendant. Del. Code Ann. tit. 11, §4504(b). The premise of Brookins' motion in

Superior Court was that the evidence of what was believed to be his blood on the glass

vase was the only solid evidence of his presence at the scene; thus, once it was

determined that he was not the source of the blood on the vase, the State's case

evaporated and no reasonable juror could have convicted him. Superior Court thought

otherwise: given the testimony of Butler and Acey Lampkins, the evidence showing

that hair consistent with that of Brookins was found at the scene, the evidence showing

that a footprint at the scene was consistent with having been made by one of Brookins'

shoes, and the impeachment of Brookins' alibi, the court concluded that a reasonable

juror could have convicted Brookins, even with the DNA evidence being admitted. The

state supreme court agreed. *Brookins*, 922 A.2d at 393-94.

For Brookins to prevail in this action, he must show that the state court decision

in his case was either contrary to or unreasonably applied Supreme Court precedent. 28

U.S.C. §2254(d). As explained by the Third Circuit, a federal court's consideration

under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must

first identify the applicable Supreme Court precedent and determine whether it resolves

the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v.

Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show

merely that his interpretation of Supreme Court precedent is more plausible than the

state court's; rather, the petitioner must demonstrate that Supreme Court precedent

requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S.

12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view

different from its own, when the precedent from this Court is, at best, ambiguous.").

Thus, if the Supreme Court has not established "a clear or consistent path" of

jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538

U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level

of specificity at which [it] decide[s] whether the state decision is contrary to, or

unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing

§2254(d)(1) has established that determining the 'clearly established' benchmark should

be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004).

Under §2254(d)(1), "the Court views its precedents in their particular factual settings.

The touchstone precedents are not to be examined by looking to broad pronouncements

or generative principles in the opinion. The 'materially indistinguishable' test

presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d

at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the

applicable Supreme Court precedent, then [the court is] required to advance to the

second step in the analysis -- whether the state court decision was based on an

'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149.

The Supreme Court has expressly held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317 (1963). To the extent that the Court in *Herrera v. Collins*, 506 U.S. 390 (1993) recognized the possibility of a persuasive freestanding claim of actual innocence, that possibility is limited to cases in which the prisoner is under a sentence of death. *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *Johnson v. Bett*, 349 F.3d 1030, 1038

(7th Cir. 2003). Indeed, the Court in *House v. Bell*, 126 S.Ct. 2064 (2006) expressly

declined to resolve whether freestanding innocence claims are possible. 126 S.Ct. at

2086-87. The decision of the state courts in Brookins' case, given the holding in

*Townsend* and the Court's refusal to reach the issue in *House*, is therefore neither

contrary to nor an unreasonable application of Supreme Court precedent. *See Foster*,

466 F.3d at 367 ("*House* did not change the law to recognize the validity of stand-alone

actual-innocence claims...."). It thus follows that Brookins has not established that he is

entitled to relief under §2254(d). *See Milone v. Camp*, 22 F.3d 693, 700 (7th Cir. 1994)

("Under these circumstances Supreme Court precedent does not allow a federal court to

issue a writ of habeas corpus only on the ground that Milone is, or might be, innocent of

the Kandel murder.").

     5. Based upon the Superior Court docket sheet, it appears that the transcript of

Brookins' trial has been prepared. In addition, the transcript of the June 14, 2006

argument before the Superior Court on Brookins' motion for a new trial and the

Superior Court's bench ruling has been prepared. In the event that the Court directs

production of any transcript, respondents cannot state with specificity when the

transcript could be produced, but reasonably expect that production would take 90

days from the issuance of any order by the Court.

/s/ **KEVIN M. CARROLL**
Kevin M. Carroll
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8943
Del. Bar ID 4836
kevin.carroll@state.de.us

November 20, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,                    :
                                    :
                Petitioner,         :
                                    :
            v.                      :    Civil Action No. 84-318-WKS
                                    :
WALTER W. REDMAN, Warden,           :
and the ATTORNEY GENERAL OF         :
THE STATE OF DELAWARE,              :
CHARLES M. OBERLY, III,             :
                                    :
                Respondents.        :

---

Jeffrey M. Weiner, Esquire, Deanna H. Kelly, Esquire, Bayard, Handelman & Murdoch, Wilmington, Delaware, Attorneys for Petitioner

John A. Parkins, Jr., Esquire, Loren C. Meyers, Esquire, Deputy Attorneys General, Wilmington, Delaware, Attorneys for Respondents

---

MEMORANDUM OPINION

Wilmington, Delaware

November 26, 1984

STAPLETON, Chief Judge

Tyrone Brookins is presently incarcerated at the Delaware Correctional Center having been convicted on June 3, 1981 of Murder, First Degree, Conspiracy, First Degree, Possession of a Deadly Weapon during the Commission of a Felony and Burglary, Second Degree.  On June 11, 1984, he filed this petition for a writ of habeas corpus alleging that (1) the trial court's failure to suppress evidence allegedly seized in violation of the fourth amendment, and (2) the trial court's denial of his motion for severance deprived him of any opportunity for a fair trial.  Petitioner also requests an evidentiary hearing on his fourth amendment claims.

I

Brookins argues that his fourth amendment rights were violated on the ground that the search warrants issued to secure samples of his head and pubic hair, and the sneakers he was wearing at the time of his arrest were not based on probable cause. As to the hair and blood samples, Brookins moved to suppress both takings on the basis that the police affidavit used to secure both warrants contained statements made in reckless disregard for the truth, which invalidated both the affidavit and the warrants under Franks v. Delaware, 438 U.S. 154 (1978).

At the pre-trial suppression hearing, the state trial court expressed considerable doubt as to whether Brookins had

1

made the initial showing required by <u>Franks</u>, but nonetheless granted Brookins' request for a <u>Franks</u> hearing. After the hearing, the trial court ruled that, setting the challenged portions of the affidavit aside, the remainder of the affidavit contained sufficient allegations to establish probable cause. At the same hearing, the trial court also considered and rejected Brookins' claim that his sneakers were illegally seized. The trial court's disposition of Brookins' fourth amendment claims were then considered and affirmed on appeal to the Delaware Supreme Court.

As to severance, Brookins contends that he was unfairly prejudiced by the admission into evidence of a statement that his codefendant, Japhis Lampkins, made to the police. During his questioning by police concerning several robberies unrelated to the present case, Lampkins informed police that he had witnessed an assault upon a woman by two individuals named Spino and Dickey. Though Lampkins denied that this assault was in any way connected to the Dugan homicide, the trial court admitted the Spino-Dickey statement, finding parallels between the statement and events surrounding the Dugan murder. The trial court expressly cautioned the jury not to consider Lampkins' Spino-Dickey statement as evidence against Brookins. Notwithstanding the court's cautionary instruction to the jury, Brookins argues that he was incriminated by the Spino-Dickey statement, since a likely inference to be drawn from the statement was that Brookins was either Spino or Dickey.

For the following reasons I will deny petitioner's request for habeas relief as well as his request for an evidentiary hearing with regard to his fourth amendment claims.

II

In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the Supreme Court held that when a state prisoner alleges a fourth amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state court had afforded the petitioner "an opportunity for a full and fair litigation" of the claim. <u>Id</u>. at 494. Moreover, the correctness of the state court's disposition of the alleged fourth amendment violation is not a relevant consideration in determining whether the petitioner was given the proper opportunity to litigate his or her fourth amendment challenge. <u>United States ex rel. Hickey v. Jeffes</u>, 571 F.2d 762, 766 (3d Cir. 1978); <u>United States ex rel. Petillo v. New Jersey</u>, 562 F.2d 903, 906 (3d Cir. 1977).

Turning to the facts of this case, it is clear that Brookins received a full and fair opportunity to present his fourth amendment claims to the state courts.

Brookins raised the fourth amendment challenges that he now asserts here before the Delaware trial court and the Delaware Supreme Court, both of which duly considered and rejected his challenges. Notably, the trial court provided Brookins a <u>Franks</u> hearing even though that court expressed serious reservations

3

about whether Brookins had satisfied the threshold test entitling him to such a hearing.[1]

　　　　While it is obvious that Brookins disagrees with the state courts' determination that the challenged search warrants were supported by probable cause, he has not demonstrated that his opportunity to litigate those claims was in any manner curtailed by the Delaware courts or Delaware procedure. E.g., United States ex rel. Maxey v. Morris, 591 F.2d 386, 389 (7th Cir.) cert. denied, 442 U.S. 912 (1979) (fourth amendment challenge on habeas rejected where Illinois did nothing to foreclose petitioners' raising their fourth amendment claims); Doleman v. Muncy, 579 F.2d 1258, 1264-65 (4th Cir. 1978) (where state provides "procedural vehicle" permitting an opportunity for full and fair litigation, Stone requires rejection of the fourth amendment habeas claim); Petillo, 562 F.2d at 907 (petitioner's fourth amendment claim rejected where he challenged not his opportunity to litigate but a credibility determination made by the state trial court after a suppression hearing).

　　　　Brookins argues that the Delaware courts erred in finding probable cause for the seizure of his hair and blood samples on the basis of the unexcised portions of the police affidavit. This argument amounts to no more than a simple disagreement with the state courts' determination that the edited version of the affidavit did indeed contain sufficient factual information to

---

[1]　　Brookins also presented his fourth amendment claims in a Delaware post-conviction relief application in which relief was denied because the fourth amendment claims had been conclusively litigated on appeal.

establish probable cause.[2]   As the Fifth Circuit has stated:

> To allow a federal district court to overrule a state court's resolution of whether there was or was not probable cause so as to admit or exclude evidence obtained by a particular search flies in the teeth of the Stone v. Powell declaration that henceforth we shall regard state judges to be as capable as federal judges to uphold the values of the fourth amendment.

Graves v. Estelle, 556 F.2d 743, 746 (5th Cir. 1977) (footnote omitted).

In addition, Brookins contends that the state courts failed to evaluate the sufficiency of the unexcised portion of the affidavit according to the appropriate constitutional standard, namely the Aguilar-Spinelli test.  However, even if Brookins is correct that the Delaware courts failed to adjudicate his fourth amendment claims according to proper legal principles, Stone v. Powell precludes this Court from correcting the state court decision.  Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978) (Stone rendered meaningless if federal court were to review claims that state court misapplied settled principles of constitutional law); Petillo, 562 F.2d at 906 [citing Holmberg v. Parratt, 548 F.2d 745, 746 (8th Cir.) cert. denied, 431 U.S. 969 (1977) (under Stone, incorrect application of fourth amendment principles by state is irrelevant in habeas review)].

---

[2]   Brookins similarly disagrees with the state courts' disposition of his fourth amendment claim relating to the seizure of his sneakers, but does not contend that his opportunity to litigate this claim was less than full or fair.

Finally, Brookins contends that both state courts incorrectly recited record facts in support of their determination that probable cause existed for the seizure of Brookins' hair and blood samples. Again, even assuming that Brookins' contention is accurate, this claim must also fail in federal court. Mack v. Cupp, 564 F.2d 898, 902 (9th Cir. 1977) (state appellate court's mistaken recitation of the facts, even if resulting in an incorrect decision, does not entitle petitioner to habeas review of fourth amendment claims).

III

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that a defendant's sixth amendment right of confrontation is denied where the incriminating confession of a codefendant is introduced and the codefendant is not subject to cross-examination. Id. at 136. The Third Circuit has held that the Bruton rule does not apply if the codefendant's extrajudicial incriminating statement does not directly implicate the defendant. United States v. Belle, 593 F.2d 487, 493 (3d Cir.) cert. denied, 442 U.S. 911 (1979). In Belle, a co-defendant incriminated himself with a statement that did not expressly mention or refer to defendant Belle. Belle nonetheless objected to the admission of his codefendant's statement on Bruton grounds, arguing that the jury would be able to draw inferences from other evidence introduced at trial that would link Belle to the incriminating statement of his codefendant. Id. at 492. The Third Circuit express-

ly rejected Belle's attempt to broaden the scope of <u>Bruton</u>, holding that a codefendant's statement that does not refer to another defendant cannot be so "'powerfully incriminating'" as to trigger the concerns of <u>Bruton</u>. <u>Belle</u>, 593 F.2d at 493, 495 (quoting <u>Bruton</u>, 391 U.S. at 135).

The foregoing principles compel rejection of Brookins' severance argument on either of two grounds. First, Lampkins <u>did</u> testify on his own behalf, and his Spino-Dickey statement was therefore subject to cross-examination by Brookins. <u>Bruton</u>'s central concern -- a defendant's constitutional right of cross-examination -- is simply not at issue in the present case.

Second, the Spino-Dickey statement did not mention or refer to Brookins. The jury in the instant case, therefore, would have had to rely on other evidence introduced at trial in order to link Brookins to the Spino-Dickey statement. Under these circumstances, <u>United States v. Belle</u> dictates that <u>Bruton</u> does not apply.[3]

I will deny petitioner's request for habeas relief and an evidentiary hearing.

---

[3]   Brookins' argument that he was unfairly prejudiced by the prosecutor's errant remark linking Brookins to the Spino-Dickey statement does not go to the question whether <u>Bruton</u> required severance of his case at the trial stage. Petitioner's objection to the prosecutor's remark is in essence a claim that his due process right to a fair trial was violated. When viewed in this light, it is clear that Brookins has not raised this claim before the Delaware courts. I will, therefore, not address it here. For the same reason, I find it unnecessary to have a transcript of all of the state court proceedings.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,             :
                                 :
          Petitioner,     :
                                 :
         v.               :     Civil Action No. 84-318-WKS
                                 :
WALTER W. REDMAN, Warden,  :
and the ATTORNEY GENERAL OF  :
THE STATE OF DELAWARE,     :
CHARLES M. OBERLY, III,    :
                                 :
         Respondents.    :

## FINAL ORDER

THIS 26th day of November, 1984, for the reasons stated in the Court's Memorandum Opinion of this date,

IT IS ORDERED that:

1.  The petition for a writ of habeas corpus is denied.

2.  There is no probable cause for appeal.

_____
United States District Judge

CPS-106

March 20, 1985

RECEIVED
APR 2 1985
DEPART...
CIVIL DIVISION

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

**C.A. No. <u>84-5837</u>**

**TYRONE BROOKINS**

        **vs.**

**WALTER W. REDMAN, Warden, and the ATTORNEY GENERAL OF THE STATE OF DELAWARE, CHARLES M. OBERLY, III**

        **(D.Del. Civ. No. 84-318)**

**Present:** WEIS, GARTH and SLOVITER, <u>CIRCUIT</u> <u>JUDGES</u>

        Submitted by the Clerk on appellant's behalf is a request for a certificate of probable cause pursuant to Rule 22(b), <u>Federal Rules of Appellate Procedure</u>

        in the above-captioned case.

                                Respectfully,

                                _Sally Nuuvs (CDN)_
                                Clerk

SM/GDH/sb
enc.

---

The foregoing Motion ~~is for~~ *for a certificate of probable cause is denied*

                                By the Court,

                                _Weis_
                                Judge

**Dated:** March 29, 1985

ad/cc: Tyrone Brookins
        Loren C. Meyers, Esq. .

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,                    )

     Petitioner,                    )

   v.                               )        Civil Action No. 86-226
                                    JRR

WALTER W. REDMAN, WARDEN,           )
ET AL.,                             )

     Respondents.                   )

---

Tyrone Brookins, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of
Justice, Wilmington, Delaware, attorney for respondents.

---

MAGISTRATE'S REPORT AND RECOMMENDATION

Dated:  August 22, 1986

Wilmington, Delaware

*R. Richard Powers*
POWERS, U. S. MAGISTRATE

The petitioner in this habeas corpus action, Tyrone Brookins, challenges his state court convictions for first degree murder, first degree conspiracy, second degree burglary, and possession of a deadly weapon during the commission of a felony. This is Brookins' second petition for habeas corpus relief in this Court. Judge Stapleton denied his previous claim. Brookins v. Redman, No. 84-318 WKS, slip op. (November 26, 1984)(copy attached hereto as Appendix "A"). Brookins raises in the instant petition a claim that Judge Stapleton refused to address because it had never been presented to the state courts. Id. at 7 n.3. Subsequent to the dismissal of the earlier petition Brookins returned to the state courts to present the issue raised here, an improper remark by the prosecutor in his closing summation which allegedly deprived Brookins of his right to a fair trial. The Delaware Supreme Court refused to address the merits of the claim because Brookins' counsel had failed to make a contemporaneous objection to the remark at trial or to raise it on direct appeal. Brookins v. State of Delaware, No. 386, 1985 (May 1, 1986). Brookins has now returned to this Court with the instant petition.

Brookins was tried with Japhis Lampkins for the robbery and murder of Mary Dugan in a Wilmington apartment. Brookins had unsuccessfully sought severance of his trial because the state intended to introduce into evidence a statement his co-defendant

2

had given to police regarding an assault he had supposedly witnessed when he was being interrogated about an unrelated crime. The statement was so strikingly similar to the circumstances of the Dugan murder that the prosecutor intended to use it as evidence against Lampkins. The Delaware Supreme Court summarized the statement as follows:

> "In early January, 1980, he was forced at gunpoint into a car by a man he knew as 'Dickey.' A man Lampkins knew to be a drug dealer named 'Spino' was in the back seat of the car next to a woman who had 'dark hair with blond streaks.' Lampkins did not know the man driving the car. Spino was Italian; Dickey and the driver appeared to be Spanish or Puerto Rican. They stopped at an apartment building at 8th and Adams Streets, followed a long walkway, and went up a few steps to the front of the building. Once inside a vacant apartment, the first apartment on the left, Lampkins was pushed toward the sole piece of furniture in the apartment--a dresser--and told to sit down. Spino then started beating, strangling, and stabbing the woman. With one hand around her throat, he punched her in the face with his other hand in which he held a knife; he then stabbed her in the chest. Finally, Spino and the driver carried the woman out of the apartment and left Lampkins at his home with the admonition 'this could happen to you.'"

Lampkins v. State, 465 A.2d 785, 789 (Del. 1983). The statement did not mention Brookins in any way. Detective Head of the Wilmington Police recounted to the jury what has become known as the "Spino-Dickey" statement. Prior to his testimony, the trial judge gave the following cautionary statement to the jury:

> "The testimony you are going to hear from the next witness, Detective Head, has to do with certain statements made by the Defendant Lampkins.

> "Once again, you are cautioned that
> this evidence is admitted solely against
> the person who made the statements, that
> is, Mr. Lampkins, and the weight to be
> given those statements is entirely up to
> you, but these statements are relevant
> only with respect to the evidence against
> Mr. Lampkins. They're not offered
> against Mr. Brookins.
>
> "You should not consider them as any
> weight -- or give any weight to them
> concerning the evidence against Mr.
> Brookins. They're restricted solely to
> Mr. Lampkins."

Just prior to the closing summation, the judge instructed the

jury as follows:

> "Members of the jury, counsel are
> about to make their closing arguments
> to you, and before they do that, I want
> to make a statement about those
> arguments. The purpose of closing
> arguments is to permit an attorney to
> sum up and argue all reasonable
> inferences from the evidence in the
> record and the law which favors his
> client or his position. And you should
> give these arguments full consideration
> in arriving at your verdict. But an
> attorney's comments are neither
> evidence nor necessarily a statement of
> the law. If your recollection, that is
> your recall of the evidence differs
> from anything  said about it by
> counsel, you should be governed by your
> own recollection because it is your
> recall and your judgment of the facts
> which controls."

During the prosecutor's rebuttal summation, he made the

following remarks:

> "So, what's the next defense that Mr.
> Green [Lampkins' attorney] brings up?
> Well, 'I wasn't there but...' You talk
> about the State wanted to have it both
> ways, wanting to have their cake and
> eat it, too. Here's your third defense.
> 'Butler [an accused co-conspirator

> turned state's witness] wasn't there
> and we weren't there.'  Number two,
> 'Butler was there but we weren't
> there.'  Number three, 'Butler was
> there and we were there but I didn't do
> anything.'  Now, that's the third
> defense, mere presence.  That's the
> third defense.  'We weren't there.'
> Well, they're afraid that Spino and
> Dickey -- and Mr. Green says again,
> Japhis Lampkins became a suspect
> because Spino and Dickey related to
> several very important things related
> to the Dugan homicide, and Detective
> Head drew those conclusion, and then -
> and then at that point Japhis Lampkins
> became a suspect.  Wrong.  Acey
> Lampkins had already spoken to the
> police.  I'm sorry, Timmy Wright had
> not.  Acey Lampkins had spoken to the
> police at that point.  So that's the
> conclusion there.  <u>But the defense is
> afraid that you will make those
> parallels and rightfully so, from Spino
> and Dickey to Butler and Brookins.</u>"
> (emphasis supplied)

No objection was made at that time to the prosecutor's passing

reference to Brookins.  Following closing statements by the

attorney, the trial judge gave the following instructions to the

jury:

> "There are two individual persons
> charged with the crimes set forth in
> the Indictment.  In effect, there are
> two separate proceedings being tried
> together because of common facts.  It
> is your duty to give separate
> consideration to the case of each
> individual defendant.  When you do so,
> you should analyze what the evidence
> in the case shows with respect to that
> individual, leaving out of
> consideration entirely any evidence
> admitted solely against some other
> defendant.  Each defendant is entitled
> to have his case determined with
> respect to whether or not the State has
> shown beyond a reasonable doubt that
> he, individually, has committed the

> crime or crimes with which he is
> charged. The fact that you may find
> one of the accused guilty or not guilty
> of one of the offenses charged should
> not in any way control your verdict
> with respect to the guilt or the
> absence of guilt of the other accused."

The jury returned a guilty verdict on all counts, and the tiral judge imposed a life sentence. Brookins' counsel timely appealed the conviction. The propriety of the prosecutor's linking Brookins to the Spino-Dickey statement was not raised on petitioner's direct appeal.

Where the state courts have not addressed the merits of a constitutional claim because of a defendant's failure to follow the state's procedures for raising the issue by a contemporaneous objection at trial or on direct appeal, a federal court is barred from reaching the merits of the claim unless the petitioner establishes justifiable cause for the failure to timely raise the claim and actual prejudice stemming from the alleged constitutional violation. Murray v. Carrier, 106 S.Ct. 2639 (1986); Wainwright v. Sykes, 433 U.S. 72 (1977). I conclude that petitioner has established neither cause nor prejudice and therefore this Court is barred from granting habeas corpus relief. The Supreme Court has held that attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default, whether the default occurs at trial or on appeal. Murray v. Carrier, supra, 106 S.Ct. at 2647; Engle v. Isaac, 456 U.S. 107, 128-34 (1982). Consequently the cause prong of the test for habeas corpus relief has not been met.

6

With respect to actual prejudice, the record shows there was substantial evidence linking Brookins to the crime. Another co-conspirator, Thomas Butler, who testified pursuant to a plea bargain with the state, testified that he went with Lampkins and Brookins to the Dugan apartment. He testified that he waited outside while the other two entered the apartment. He heard Lampkins' voice, scuffling and a woman moaning before he fled the scene. Thus there was eyewitness testimony linking Brookins to the crime. In addition expert witnesses testified to a close match (1) between Brookins' hair and hairs found at the scene of the crime, (2) between Brookins' sneakers and shoe prints found at the scene of the crime, and (3) between Brookins' blood and a blood stain found on a vase in the apartment.

In light of the circumstances presented here that the evidence linking Brookins to the crime was strong, that the Spino-Dickey statement does not refer to Brookins at all, that the prosecutor's remarks linking Brookins to the Spino-Dickey statement were limited to one sentence, and that the trial judge gave instructions both prior to and after the erring comment that would have minimized any prejudice, it is clear that petitioner has not established any prejudice resulting from his counsel's failure to object to the comment at the time or to raise the issue on appeal.

Since petitioner has not established justifiable cause for and actual prejudice from his attorney's failure to timely object to the prosecutor's comment, I recommend that the writ be

denied and the petition dismissed without reaching the merits of the claim.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,                    : )

     Petitioner,

  v.                                  )

WALTER W. REDMAN, WARDEN,               Civil Action No. 86-226 - JRR
ET AL.,

     Respondents.                 )

                            )

## FINAL ORDER

This ___10th___ day of ___September___ , for the reasons stated in the Magistrate's Report and Recommendation, dated August 22, 1986.

     Now, therefore, IT IS ORDERED that:

     1.  The Magistrate's Report and Recommendation is accepted and adopted by the Court.

     2.  The application for a writ of habeas corpus is hereby denied and the petition is hereby dismissed.

     3.  No probable cause exists for an appeal.

                                      United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,                      )

     Petitioner,

  v.                                  )

WALTER REDMAN, WARDEN,                 Civil Action No. 87-434 - JLL
AND CHARLES M. OBERLY,
III, ATTORNEY GENERAL                 )
OF THE STATE OF DELAWARE,

    Respondents.

                    )

## FINAL ORDER

This _____5th_____ day of October, 1987, for the reasons
stated in the Magistrate's Report and Recommendation, dated
September 15, 1987.

     Now, therefore, IT IS ORDERED that:

     1.  The Magistrate's Report and Recommendation is
accepted and adopted by the Court.

     2.  The application for a writ of habeas corpus
is hereby denied and the petition is hereby dismissed.

     3.  No probable cause exists for an appeal.


                              _____
                              United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE BROOKINS,                   )
                                   )
          Petitioner,              )
                                   )
     v.                            )
                                   )     Civil Action No. 87-434
WALTER REDMAN, WARDEN,             )              JLL
AND CHARLES M. OBERLY,             )
III, ATTORNEY GENERAL              )
OF THE STATE OF DELAWARE,          )
                                   )
          Respondents.             )


## MAGISTRATE'S REPORT AND RECOMMENDATION

POWERS, U. S. MAGISTRATE


     The petitioner in this action, Tyrone Brookins has
filed his third petition for habeas corpus relief. The previous
two were unsuccessful. See Brookins v. Redman, No. 84-318
(D.Del. November 26, 1984); Brookins v. Redman, No. 86-226
(D.Del. September 10, 1986)(adopting Magistrate's Report and
Recommendation dated August 22, 1986). Brookins was convicted
along with Japhis Lampkins for the robbery and murder of Mary
Dugan in a Wilmington apartment in 1980[1]. Two claims are
raised in Brookins' latest petition, first that the prosecutor

_____

[1]Lampkins has also filed several unsuccessful habeas corpus
petitions in this Court.

made an improper comment in his closing summation; and second that his counsel was ineffective in failing to make a contemporaneous objection to the prosecutor's comment or to raise the matter on direct appeal.

The first claim is the same claim that Brookins raised in No. 86-226[2]. Brookins had failed to raise the claim on direct appeal of his conviction to the Delaware Supreme Court. When he raised the claim in his first habeas petition, No. 84-318, Judge Stapleton dismissed the claim for failure to exhaust. Brookins then returned to state court and raised the claim in a motion for post-conviction relief. The state courts refused to hear the merits of the claim because Brookins had failed to file a contemporaneous objection or raise the matter on direct appeal. In deciding whether to entertain the merits of the claim the state courts applied the cause and prejudice test laid down in Wainwright v. Sykes, 433 U.S. 72 (1977), and had concluded that Brookins had demonstrated cause but had not demonstrated actual prejudice from the prosecutor's remark. Brookins then returned to this Court and raised the claim of prosecutorial misconduct in No. 86-226.

Since the state courts had refused to address the merits of the claim because of the petitioner's failure to follow the state procedures, this Court also applied the cause and prejudice test of Murray v. Carrier, 477 U.S.--, 106 S.Ct. 2639

---

[2]A copy of the Report and Recommendation in No. 86-226 is attached hereto as Exhibit "A". The recounting of events therein is incorporated by reference.

(1986) and Wainwright v. Sykes, <u>supra</u>.  This Court concluded that attorney error short of ineffective assistance of counsel does not establish cause for a procedural default and that under the circumstances of this case, Brookins was not prejudiced by his attorney's failure to contemporaneously object to the prosecutor's comment or to raise the issue on appeal.  Since this claim has already been raised in this Court and dismissed adversely to petitioner, it may be dismissed at the outset as a successive petition under Rule 9(b) of the Rules Governing § 2254 cases.

Although this Court purportedly did not reach the merits of the claim that the prosecutor's closing argument violated petitioner's constitutional rights, in reality it did. An improper statement in a prosecutor's closing argument will warrant habeas corpus relief only if the petitioner demonstrates that the remarks make the trial fundamentally unfair.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Government of the Virgin Islands v. Joseph, 770 F.2d 343, 350-51 (3d Cir. 1985). In other words, would the jury have convicted Brookins even if it had not been exposed to the allegedly improper comments?  But this is precisley the analysis which the Court conducted in determining that Brookins had not established "prejudice" from his attorney's failure to contemporaneously object to the proscutor's remarks or to raise them on direct appeal.  Thus, although as a matter of form the Court did not reach the merits

3

of the claim in No. 86-226, it engaged in the same analysis that a review on the merits would entail.

Predictably Brookins has now returned to this Court for a third time, urging that his attorney's failure to object to the prosecutor's remark and failure to raise the issue on appeal was ineffective assistance of counsel. But this claim is also governed by the Court's finding of no prejudice in connection with the cause and prejudice analysis made in No. 86-226. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that the test for determining effectiveness of counsel is whether counsel's conduct fell outside a range of acceptable professional conduct. The defendant must also show that but for counsel's errors there is a reasonable probability the outcome would have been different. If it is an easier task to determine that no prejudice has occurred, then the claim can be resolved on this ground without determining if the attorney's conduct amounted to ineffective assistance of counsel. Id. at 697.

Since this Court has already determined in No. 86-226 that petitioner was not prejduiced by his attorney's failure to object to the prosecutor's remark, i.e. the outcome of the trial and his appeal would have been the same in any event, then for sixth amendment purposes, the petitioner did not show that, but for his counsel's errors, the outcome would have been different. Since the necessary showing of prejudice to establish a cognizable claim for relief is foreclosed by this Court's ruling

in No. 86-226, this claim is also subject to dismissal prior to service on the respondents.

Since it is clear that petitioner is not entitled to habeas corpus relief on either claim he has raised, I recommend that the writ be denied and the petition dismissed.

Dated:   September 15, 1987
Wilmington, Delaware

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
TYRONE BROOKINS,              )
                             )
       Petitioner,            )
                             )
   v.                         )     Civil Action No. 86-226
                             )                     JRR
WALTER W. REDMAN, WARDEN,     )
ET AL.,                       )
                             )
       Respondents.          )
```

---

Tyrone Brookins, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, attorney for respondents.

---

## MAGISTRATE'S REPORT AND RECOMMENDATION

Dated:  August 22, 1986

Wilmington, Delaware

*R. Richard Powers*
POWERS, U. S. MAGISTRATE

The petitioner in this habeas corpus action, Tyrone Brookins, challenges his state court convictions for first degree murder, first degree conspiracy, second degree burglary, and possession of a deadly weapon during the commission of a felony. This is Brookins' second petition for habeas corpus relief in this Court. Judge Stapleton denied his previous claim. Brookins v. Redman, No. 84-318 WKS, slip op. (November 26, 1984)(copy attached hereto as Appendix "A"). Brookins raises in the instant petition a claim that Judge Stapleton refused to address because it had never been presented to the state courts. Id. at 7 n.3. Subsequent to the dismissal of the earlier petition Brookins returned to the state courts to present the issue raised here, an improper remark by the prosecutor in his closing summation which allegedly deprived Brookins of his right to a fair trial. The Delaware Supreme Court refused to address the merits of the claim because Brookins' counsel had failed to make a contemporaneous objection to the remark at trial or to raise it on direct appeal. Brookins v. State of Delaware, No. 386, 1985 (May 1, 1986). Brookins has now returned to this Court with the instant petition.

Brookins was tried with Japhis Lampkins for the robbery and murder of Mary Dugan in a Wilmington apartment. Brookins had unsuccessfully sought severance of his trial because the state intended to introduce into evidence a statement his co-defendant

had given to police regarding an assault he had supposedly witnessed when he was being interrogated about an unrelated crime. The statement was so strikingly similar to the circumstances of the Dugan murder that the prosecutor intended to use it as evidence against Lampkins. The Delaware Supreme Court summarized the statement as follows:

> "In early January, 1980, he was forced at gunpoint into a car by a man he knew as 'Dickey.' A man Lampkins knew to be a drug dealer named 'Spino' was in the back seat of the car next to a woman who had 'dark hair with blond streaks.' Lampkins did not know the man driving the car. Spino was Italian; Dickey and the driver appeared to be Spanish or Puerto Rican. They stopped at an apartment building at 8th and Adams Streets, followed a long walkway, and went up a few steps to the front of the building. Once inside a vacant apartment, the first apartment on the left, Lampkins was pushed toward the sole piece of furniture in the apartment--a dresser--and told to sit down. Spino then started beating, strangling, and stabbing the woman. With one hand around her throat, he punched her in the face with his other hand in which he held a knife; he then stabbed her in the chest. Finally, Spino and the driver carried the woman out of the apartment and left Lampkins at his home with the admonition 'this could happen to you.'"

Lampkins v. State, 465 A.2d 785, 789 (Del. 1983). The statement did not mention Brookins in any way. Detective Head of the Wilmington Police recounted to the jury what has become known as the "Spino-Dickey" statement. Prior to his testimony, the trial judge gave the following cautionary statement to the jury:

> "The testimony you are going to hear from the next witness, Detective Head, has to do with certain statements made by the Defendant Lampkins.

3

> "Once again, you are cautioned that this evidence is admitted solely against the person who made the statements, that is, Mr. Lampkins, and the weight to be given those statements is entirely up to you, but these statements are relevant only with respect to the evidence against Mr. Lampkins. They're not offered against Mr. Brookins.

> "You should not consider them as any weight -- or give any weight to them concerning the evidence against Mr. Brookins. They're restricted solely to Mr. Lampkins."

Just prior to the closing summation, the judge instructed the jury as follows:

> "Members of the jury, counsel are about to make their closing arguments to you, and before they do that, I want to make a statement about those arguments. The purpose of closing arguments is to permit an attorney to sum up and argue all reasonable inferences from the evidence in the record and the law which favors his client or his position. And you should give these arguments full consideration in arriving at your verdict. But an attorney's comments are neither evidence nor necessarily a statement of the law. If your recollection, that is your recall of the evidence differs from anything said about it by counsel, you should be governed by your own recollection because it is your recall and your judgment of the facts which controls."

During the prosecutor's rebuttal summation, he made the following remarks:

> "So, what's the next defense that Mr. Green [Lampkins' attorney] brings up? Well, 'I wasn't there but...' You talk about the State wanted to have it both ways, wanting to have their cake and eat it, too. Here's your third defense. 'Butler [an accused co-conspirator

> turned state's witness] wasn't there
> and we weren't there.'  Number two,
> 'Butler was there but we weren't
> there.'  Number three, 'Butler was
> there and we were there but I didn't do
> anything.'  Now, that's the third
> defense, mere presence.  That's the
> third defense.  'We weren't there.'
> Well, they're afraid that Spino and
> Dickey -- and Mr. Green says again,
> Japhis Lampkins became a suspect
> because Spino and Dickey related to
> several very important things related
> to the Dugan homicide, and Detective
> Head drew those conclusion, and then -
> and then at that point Japhis Lampkins
> became a suspect.  Wrong.  Acey
> Lampkins had already spoken to the
> police.  I'm sorry, Timmy Wright had
> not.  Acey Lampkins had spoken to the
> police at that point.  So that's the
> conclusion there.  <u>But the defense is
> afraid that you will make those
> parallels and rightfully so, from Spino
> and Dickey to Butler and Brookins.</u>"
> (emphasis supplied)

No objection was made at that time to the prosecutor's passing

reference to  Brookins.  Following closing statements by the

attorney,  the trial judge gave the following instructions to the

jury:

> "There are two individual persons
> charged with the crimes set forth in
> the Indictment.  In effect, there are
> two separate proceedings being tried
> together because of common facts.  It
> is your duty to give separate
> consideration to the case of each
> individual defendant.  When you do so,
> you should analyze what the evidence
> in the case shows with respect to that
> individual,  leaving out of
> consideration entirely any evidence
> admitted solely against some other
> defendant. Each defendant is entitled
> to have his case determined with
> respect to whether or not the State has
> shown beyond a reasonable doubt that
> he, individually, has committed the

> crime or crimes with which he is
> charged. The fact that you may find
> one of the accused guilty or not guilty
> of one of the offenses charged should
> not in any way control your verdict
> with respect to the guilt or the
> absence of guilt of the other accused."

The jury returned a guilty verdict on all counts, and the tiral judge imposed a life sentence. Brookins' counsel timely appealed the conviction. The propriety of the prosecutor's linking Brookins to the Spino-Dickey statement was not raised on petitioner's direct appeal.

Where the state courts have not addressed the merits of a constitutional claim because of a defendant's failure to follow the state's procedures for raising the issue by a contemporaneous objection at trial or on direct appeal, a federal court is barred from reaching the merits of the claim unless the petitioner establishes justifiable cause for the failure to timely raise the claim and actual prejudice stemming from the alleged constitutional violation. Murray v. Carrier, 106 S.Ct. 2639 (1986); Wainwright v. Sykes, 433 U.S. 72 (1977). I conclude that petitioner has established neither cause nor prejudice and therefore this Court is barred from granting habeas corpus relief. The Supreme Court has held that attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default, whether the default occurs at trial or on appeal. Murray v. Carrier, supra, 106 S.Ct. at 2647; Engle v. Isaac, 456 U.S. 107, 128-34 (1982). Consequently the cause prong of the test for habeas corpus relief has not been met.

6

With respect to actual prejudice, the record shows there was substantial evidence linking Brookins to the crime. Another co-conspirator, Thomas Butler, who testified pursuant to a plea bargain with the state, testified that he went with Lampkins and Brookins to the Dugan apartment. He testified that he waited outside while the other two entered the apartment. He heard Lampkins' voice, scuffling and a woman moaning before he fled the scene. Thus there was eyewitness testimony linking Brookins to the crime. In addition expert witnesses testified to a close match (1) between Brookins' hair and hairs found at the scene of the crime, (2) between Brookins' sneakers and shoe prints found at the scene of the crime, and (3) between Brookins' blood and a blood stain found on a vase in the apartment.

In light of the circumstances presented here that the evidence linking Brookins to the crime was strong, that the Spino-Dickey statement does not refer to Brookins at all, that the prosecutor's remarks linking Brookins to the Spino-Dickey statement were limited to one sentence, and that the trial judge gave instructions both prior to and after the erring comment that would have minimized any prejudice, it is clear that petitioner has not established any prejudice resulting from his counsel's failure to object to the comment at the time or to raise the issue on appeal.

Since petitioner has not established justifiable cause for and actual prejudice from his attorney's failure to timely object to the prosecutor's comment, I recommend that the writ be

denied and the petition dismissed without reaching the merits of
the claim.

## CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of the United States District Court for the District of Delaware, hereby certifies that on November 20, 2007,

1. He caused two copies of the attached document (Answer) to be deposited in the United States Mail, first class postage prepaid, addressed to the following non-registered participant:

Tyrone Brookins
SBI# 128849
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

2. He electronically filed the Answer with the Clerk of the District Court using CM/ECF.

/s/ **KEVIN M. CARROLL**
Kevin M. Carroll
Deputy Attorney General
kevin.carroll@state.de.us