## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TYRONE BROOKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 07-423-GMS |
| | ) | |
| PERRY PHELPS, Warden,[1] and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

_____

Tyrone Brookins. *Pro se* petitioner.

Kevin M. Carroll, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

_____

## MEMORANDUM OPINION

Sept 30, 2010
Wilmington, Delaware

---

[1]Warden Perry Phelps replaced former Warden Thomas Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2254 filed by petitioner Tyrone Brookins ("Brookins"). (D.I. 1.) For the reasons discussed, the
court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 1980, Brookins and his co-defendant Japhis Lampkins, were indicted and charged
with first degree murder, second degree burglary, first degree conspiracy, two counts of second
degree conspiracy, and possession of a deadly weapon during the commission of a felony. (D.I.
13.) The evidence presented at Brookins' trial established the following facts. *See Lampkins v.
State*, 465 A.2d 785, 786-87 (Del. 1983). Mary Dugan lived with her son in an apartment at
1409 Delaware Avenue in Wilmington. Returning from shopping at the Acme Supermarket at
Delaware Avenue and Dupont Street on the afternoon of April 2, 1980, Mary Dugan was killed
shortly after entering her apartment. A neighbor in the apartment building heard a woman
moaning before 3 p.m. A short time later, the neighbor heard the front door of the building slam
shut. She went to the window and saw a man run out from the building's front door and run
toward Rodney Street; the description she gave of the man's clothing was consistent with a
description of clothing worn by Lampkins earlier that day. At that point, the neighbor called the
building manager and asked him to call police. Police arrived at the building at 3:13 p.m. An
officer, walking down the rear staircase of the building, noticed the rear door to Dugan's
apartment was open. Looking inside, the officer discovered Dugan's body in the living room.
She had been beaten on the head, repeatedly stabbed, and strangled. *Id.*

Thomas Butler, a co-conspirator, testified against Lampkins and Brookins in exchange for

1

pleading guilty to manslaughter and second degree conspiracy. Butler testified that on the
morning of April 2, he and Lampkins committed an armed robbery in Newark, separating on
their return to Wilmington. During the afternoon, he saw Lampkins again, who was now
accompanied by Brookins. The three of them then ingested various drugs. Knowing that
Lampkins and Butler had successfully robbed someone earlier that day, Brookins was anxious to
do so as well. The trio first drove north on Delaware Avenue, past the Trolley Square
neighborhood, considering a liquor store as a possible target. The three then decided otherwise
and returned to the Trolley Square neighborhood and went to the Acme Supermarket. There they
saw Dugan leave the store, and they followed her to her apartment. Butler waited outside while
Brookins and Lampkins went into the building. Butler fled a few moments later after hearing
Lampkins' voice, scuffling, and a woman moaning. *Id.*

Hairs found on the back door of Dugan's apartment and on a tissue found next to Dugan's
body matched Brookins' head and pubic hair. A shoe print lifted from the blood-covered floor
was similar in design and size of the footprint and shoe Brookins was wearing when arrested.
Blood on a vase found on a chair near Dugan was determined at the time not to be Dugan's
blood, instead matching Brookins' blood type and enzyme markers in all but one aspect.
Lampkins' brother and nephew testified about various statements Lampkins and Butler had made
describing the murder. The clothing worn by Lampkins at the scene of the Dugan slaying was
similar to that seen by a witness to the Newark robbery. The jury also heard a statement given by
Lampkins to police, about two weeks after the Dugan homicide, in which he recounted an assault
he claimed to have witnessed about three months earlier. *Id.*

Brookins testified that he was in downtown Wilmington at the time of the slaying, with a

2

woman named Debbie Benson. Brookins also explained that he had cut his hand when he fell while playing handball with Eric Jones. Jones testified that he had told Brookins' attorneys he could corroborate Brookins' account of the cut to his hand. But Jones explained that he had lied to defense counsel when he had said that. The reason Jones gave for the change was that he had received a threatening phone call from prison. And though Benson supported Brookins' alibi at trial, her testimony was inconsistent with a written statement she had given to detectives on April 10. In that statement, initialed by her on each page, Benson declared that Brookins had been with her until about 1 p.m. on the day of the murder and then he told her he was going to a pool hall. *Id.*

In May 1981, a Superior Court jury convicted the Brookins and Lampkins of first degree murder, second degree burglary, first degree conspiracy, and the weapons offense. The prosecution entered *nolle prosequis* on the two counts of second degree conspiracy. The Superior Court sentenced Brookins to life imprisonment without parole, with an additional fifteen years of imprisonment. Brookins appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *Id.*

Thereafter, Brookins filed in the Delaware Superior Court two motions for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motions, and the Delaware Supreme Court affirmed those judgments. *Brookins v. State,* 509 A.2d 94 (Table), 1986 WL 16796 (Del. May 1, 1986); *Brookins v. State*, 741 A.2d 1025 (Table), 1999 WL 1090567 (Del. Oct. 14, 1999). Brookins also filed in this court several petitions seeking federal habeas relief, all of which were denied. *See Brookins v. Redman*, Civ. Act. No. 84-318-WKS (D. Del. Nov. 26, 1984); *Brookins v. Redman*, Civ. Act.

3

No. 86-226-JRR (D. Del. Sept. 10, 1986); *Brookins v. Redman*, Civ. Act. No. 87-434-JLL (D. Del. Oct. 5, 1987.)

In August 2002, Brookins, represented by the Public Defender, moved to have DNA testing done of blood spots found on the glass vase. The Superior Court permitted the testing, which was completed in July 2004. *State v. Brookins*, 2002 WL 31477997 (Del. Super. Ct. Oct. 28, 2002). The DNA testing showed that the blood on the vase was not that of Brookins, but that of Dugan. Based on those results, the Public Defender moved for a new trial for Brookins under 11 Del. Code Ann. § 4504(b). The Superior Court denied the motion for new trial after considering the State's response to the motion, as well as oral argument. Brookins appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *Brookins v. State*, 922 A.2d 389 (Del. 2007).

Brookins timely filed the pending federal habeas petition, and the State filed an answer asking the court to deny the petition. (D.I. 1; D.I. 13.)

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

4

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

## B. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state

court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United States;
or
(2) resulted in a decision that was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009). In determining whether the Federal law is "clearly established," the focus is on

Supreme Court holdings, rather than dicta, that were clearly established at the time of the

pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (2010).

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

5

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Brookins' petition asserts the following two claims for relief: (1) the Superior Court erred by not granting the Public Defender's motion for a default judgment when prosecutors failed to timely file a response to the § 4504 motion for a new trial or failed to timely request an extension of time in which to file the response; and (2) the Superior Court committed constitutional error in not granting the § 4504 motion for new trial.

As an initial matter, the court notes that instant petition does not constitute a second or successive habeas petition under § 2244(d), because Brookins' argument that he should have a new trial based on the DNA evidence was not ripe when he filed his prior habeas petitions. The court also notes that the State has expressly waived any statute of limitations defense that might be available under § 2244(d). And finally, Brookins' presentation of the instant two arguments to the Delaware Supreme Court on appeal of the Superior Court's denial of the § 4504 motion for new trial satisfies the exhaustion requirement in § 2254(b). Nevertheless, for the reasons set forth below, the court concludes that Brookins is not entitled to habeas relief.

### A. Claim one: the Superior Court's denial of Brookins' motion for default judgment

On July 27, 2004, the Public Defender filed a motion for new trial based on the new DNA evidence. In a letter dated September 15, 2004, the judge presiding over the case directed the State to file a response to the motion by October 11, 2004. On October 7, 2004, the prosecutor to whom the case had been assigned wrote to the judge, asking for a 45 day extension of time in which to answer the motion. Six days later, defense counsel wrote to the judge, objecting to the

6

State's request. The State's response was filed on November 22, 2004, and defense counsel filed a reply on December 17, 2004.

Nothing happened in the case until July 2005, when defense counsel moved for a default judgment. Defense counsel argued that the State's answer to the motion for a new trial was untimely because there was no indication that the Superior Court had ever granted the State's request for additional time. The Superior Court denied the motion for a default judgment, and the Delaware Supreme Court affirmed that ruling. *Brookins*, 922 A.2d at 391-92.

Now, in claim one, Brookins contends that the Superior Court committed constitutional error in denying his motion for default judgment because the State's request for an extension of time to file an answer to the motion was untimely, and also because the Superior Court did not make any inquiry into the State's request for an extension of time to file an answer. This argument, however, challenges the Superior Court's interpretation and application of Delaware law, which fails to present an issue cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (1997). Accordingly, the court will deny claim one for failing to assert a proper claim for federal habeas relief.

### B. Claim two: Superior Court's denial of the motion for new trial violated Brookins' right to equal protection

Pursuant to title 11, section 4504(b) of the Delaware Code, a defendant may move for a new trial on the basis that DNA evidence not available at the time of his trial establishes his actual innocence. The trial court may order a new trial if the defendant "establishes by clear and convincing evidence that no reasonable trier of fact, considering the evidence presented at trial, evidence that was available at trial but was not presented or was excluded, and the DNA evidence would have convicted" the defendant. Del. Code Ann. tit. 11, § 4504(b)

7

In his motion for new trial filed pursuant to § 4504(b), Brookins argued that the evidence of what was believed to be his blood on the glass vase was the only solid evidence of his presence at the scene; thus, once it was determined that he was not the source of the blood on the vase, the State's case evaporated and no reasonable juror could have convicted him. The Superior Court concluded otherwise. After reviewing the DNA evidence along with the testimony of Butler and Acey Lampkins, the evidence showing that hair consistent with that of Brookins was found at the scene of the murder, the evidence showing that a footprint at the scene was consistent with having been made by one of Brookins' shoes, and the impeachment of Brookins' alibi, the Superior Court concluded that a reasonable juror could have convicted Brookins even if the DNA evidence had been admitted. Consequently, the Superior Court denied Brookins' motion for new trial, and the Delaware Supreme Court affirmed that decision.

It is well-settled that a petitioner's claim of actual innocence can constitute the basis for federal habeas relief when combined with an independent constitutional error that occurred during his criminal trial. *Herrera v. Collins*, 506 U.S. 390 (1993). It is also well-settled that a petitioner's freestanding claim of actual innocence can provide the "gateway" through which he has to pass in order to have his otherwise procedurally barred claims reviewed on the merits. *Schlup v. Delo*, 513 U.S. 298 (1995). However, the Supreme Court has never explicitly held that a freestanding claim of actual innocence can be considered on federal habeas review, even in a death penalty case. *House v. Bell*, 547 U.S. 518, 555 (2006); *see also Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

Brookins has asserted a freestanding claim of actual innocence without alleging or demonstrating an independent constitutional violation occurred during his trial. Given the

8

absence of any clearly established Supreme Court precedent recognizing freestanding claims of actual innocence for non-capital cases on federal habeas review, the court concludes that Brookins has not presented the court with a proper basis for federal habeas relief.

Nevertheless, even if the court were to assume that a freestanding actual innocence claim could be asserted on federal habeas review, the court would not grant Brookins relief because the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law. Eleven years after the Supreme Court articulated the *Schlup* standard for gateway actual innocence claims, it was presented with a freestanding claim of actual innocence in the capital case, *House v. Bell*, 547 U.S. 518, 555 (2006). Despite declining to resolve the issue as to whether freestanding claims of innocence were cognizable in capital habeas cases, the *House* Court explained that the burden for proving a hypothetical freestanding innocence claim would be extraordinarily high, requiring more convincing proof of innocence than the gateway showing required by *Schlup. Id.* at 554-55. Consequently, in order to prevail on the instant freestanding actual innocence claim, Brookins must, at a minimum, satisfy the *Schlup* gateway standard by demonstrating it is "more likely than not, in light of the new evidence, that no reasonable juror would find him guilty beyond a reasonable doubt."[2] *House*, 547 U.S. at 538.

---

[2]However, the court notes that,

the gateway actual-innocence standard is by no means equivalent to the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), which governs claims of insufficient evidence. When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonable so long as sufficient evidence supports the verdict. Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record.

*House*, 547 US. At 538-39 (internal citations omitted).

After reviewing the record and the new DNA evidence obtained from the vase, the court concludes that Brookins has failed to demonstrate his actual innocence under the *Schlup* standard. On appeal from the Superior Court's denial of his motion for new trial, Brookins argued that the Superior Court erred in ascribing too much weight to the other evidence admitted during his trial when it denied his motion for new trial. The Delaware Supreme Court rejected this argument after determining that: (1) the "microscopic comparison of hair samples was properly admitted into evidence at Brookins' trial and was properly considered in evaluating the strength of his argument based on the new DNA evidence report;" (2) the "trial judge placed appropriate and limited weight on the shoeprint evidence, and properly held that the shoeprint evidence certainly did not exculpate Brookins;" and (3) Brookins' co-defendant's testimony regarding Brookins' presence at the time of the murder was corroborated in several ways. *Brookins*, 922 A.2d. at 393-94. The Delaware Supreme Court explained that

the record reflects that Brookins' argument overemphasizes the weight of the new DNA test results relating to the blood on the vase and overlooks the uncontradicted circumstantial evidence supporting his convictions. Although no single item of evidence, viewed in isolation, may have been sufficient to convict Brookins, the physical evidence and the testimony of other witnesses, taken together, were sufficient to support a jury finding that Brookins was present at the scene and was guilty of the crimes charged beyond a reasonable doubt.

*Id.* at 394. Consequently, the Delaware Supreme Court concurred with the Superior Court's holding that "it is not likely that the DNA evidence would change the result even if a new trial was granted . . . the evidence was substantial . . . a reasonable jury [] was likely to reach the same conclusion given quantity and sufficiency of the evidence, even in light of the DNA test results." *Id.*

As found by the Delaware Supreme Court, the blood evidence from the vase admitted

10

during his trial was only one part of the substantial body of evidence linking Brookins to the crime and establishing his guilt. Consequently, the court cannot conclude that, had the jury considered the DNA evidence eliminating Brookins as the source of the blood on the vase, it is more likely than not that no reasonable juror viewing the record as a whole would have convicted him.

In turn, given Brookins' failure to satisfy the less stringent *Schlup* gateway standard, the court concludes that Brookins has failed to demonstrate his actual innocence under the more stringent standard articulated in *House*. Thus, the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, *Herrara*, *Schlup*, or *House*. Accordingly, the court will deny claim two.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Brookins' petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Brookins' petition for habeas relief pursuant to 28 U.S.C. § 2254

11

Case 1:07-cv-00423-GMS   Document 27   Filed 09/30/10   Page 13 of 14 PageID #: 156

is denied.  An appropriate order shall issue.

12

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYRONE BROOKINS, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 07-423-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Tyrone Brookins' petition for the writ of habeas corpus filed pursuant to 28

U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**. (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Brookins' failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated:  $\text{Sept}$  **30**  , 2010

CHIEF, UNITED STATES DISTRICT JUDGE